UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:22-CR-34-M

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>CHARLES ALLEN CREWS | MEMORANDUM IN AID OF SENTENCING |

      The defendant, Charles Allen Crews, by and through the undersigned counsel, respectfully submits this sentencing memorandum in support of his request for a reasonable sentence. Mr. Crews acknowledges that his prior criminal history qualifies him for enhanced sentencing penalties. He respectfully submits, however, that the career offender enhancement should be rejected on policy grounds. He further submits that this case warrants a downward variance based on mitigating circumstances in his personal history, particularly his long history of drug addiction. These factors suggest that a sentence below the advisory guidelines range stated in the presentence report is "sufficient, but not more than necessary to accomplish the statutory factors set forth in 18 U.S.C. § 3553(a).

## FACTS PERTINENT TO SENTENCING

      While Mr. Crews reports a reasonably happy childhood free from abuse or violence, it is particularly noteworthy that his abuse of substances began when he was just 13 years old. At the age of 13, Mr. Crews began consuming alcohol, a practice that would continue until the day of his arrest.

1

He reports he would drink on a daily basis, consuming up to 24 beers daily. While his alcohol use is clearly excessive, at the same time that he started drinking, he also began smoking marijuana. This too was a daily habit until his arrest. Within a couple of years, he branched out into cocaine and crack cocaine use. Finally, at the age of 17 he found his drug of choice, methamphetamine. He consumed at least 2 grams of meth daily prior to his arrest. Mr. Crews is clearly an addict. He has had numerous criminal cases and involvement with law enforcement. What he has not had is any meaningful access to treatment for his addictions. His only foray into treatment was his participation in the DART program in 2018. Mr. Crews was already in his 40's when he first attempted treatment for substance abuse. By that time, his drug use had been a daily habit for decades. Clearly, greater intervention was warranted and necessary.

The facts and circumstances of Mr. Crews' arrest and his involvement with the law in the last five years show that his most serious involvement in criminal activity also coincides with heavy drug and alcohol use. Mr. Crews' predominant purpose in selling drugs was simple: he wanted to ensure that he had a supply of drugs available to feed his own habit. He is not proud of his choice to engage in the drug trade, but simply saw it as a means to enable his own drug use. On the subject of addiction, one judge, in giving a sentence of probation to a defendant whose guideline range was 30-37 months, wrote the following:

> The status of being addicted has an ambiguous relationship to the defendant's culpability. It could be a mitigating factor, explaining the motivation for the crime. It could be an aggravating factor, supporting a finding of likely recidivism.[1] On the other hand, the relationship between drug rehabilitation and crime is clear. If drug addiction creates a propensity to crime, drug rehabilitation goes a long way to preventing recidivism. In fact, statistics suggest that the rate of recidivism is far less

---

[1] Barbara A. Meierhoefer, *The Role of Offense and Offender Characteristics in Federal Sentencing*, 66 S. Cal. L. Rev. 367, 385 (1992).

> for drug offenders who receive treatment while in prison or jail, and still less for those treated outside of a prison setting.[2]

*United States v. Parella*, 273 F. Supp. 2d 162, 164 (D. Mass. 2003 (Gertner, J.))

Mr. Crews is now 45 years old. He has been an abuser of drugs and alcohol throughout his entire life. Despite a lifetime of addiction, he now has a willingness and a determination to break his habits. He has been continuously in custody since May of 2021. He has remained drug free throughout his recent term of incarceration. He is willing to enter a residential drug treatment program or participate in outpatient classes and is mentally committed to overcoming his addictions. These are all necessary components of successful rehabilitation and Mr. Crews should be credited for his attitude toward recovery. Incorporating substance abuse treatment into his sentence will do more to keep him from reoffending and protect the public more effectively than an excessively lengthy prison term and this Court should exercise its discretion to ensure that Mr. Crews is given the opportunity to follow through with his efforts to maintain his sobriety.

Mr. Crews greatly regrets the conduct that brings him before this Court and knows that he can maintain a law-abiding life as long as he can refrain from abusing drugs and alcohol. This is why he is requesting drug treatment both during his time in the Bureau of Prisons and while on supervised release. He hopes that this court can impose a sentence that will place him on a path to a drug-free, productive life.

**ARGUMENT**

A.  **Mr. Crews' Advisory Guideline Range.**

---

[2] Lisa Rosenblum, *Mandating Effective Treatment for Drug Offenders*, 53 Hastings L.J. 1217, 1220 (2002).

Pursuant to the calculations in the PSR, Mr. Crews' offense conduct involved a total converted drug weight of at least 400 but not more than 700 kilograms for a base offense level of 26. Two levels are added because Mr. Crews also possessed a firearm and two levels are added under USSG §3C1.2 for an adjusted offense level of 30. Assuming a three-level reduction for acceptance of responsibility, his adjusted offense level would be 27. Mr. Crews' criminal convictions place him in Criminal History Category VI (CHC VI). An offense level of 27 in CHC VI yields an advisory imprisonment range of 130-162 months.

The parties and the probation office are in agreement that the career offender guidelines apply in this case. Under the career offender guideline, Mr. Crews is subject to an advisory guideline range of 151-188 months based on an adjusted offense level of 29. His designation as a career offender is due in part to his conviction in 2005 for common law robbery. Mr. Crews was released from custody on that conviction on August 18, 2006. This is 14 years, 7 months and 16 days prior to the criminal conduct which brings him before this Court. The guidelines take into considerations convictions within the last 15 years, as such, this conviction only qualifies by a few short months.

Mr. Crews does not dispute that he qualifies for enhanced sentencing under the career offender guidelines, but submits that it yields a sentence far greater than necessary to satisfy the purposes of sentencing.

**B. Mr. Crews' Guideline Range Over-Represents the Seriousness of his Offense Conduct.**

Mr. Crews has been categorized as a career offender by the guidelines based on his prior convictions, specifically, a nearly 20-year-old robbery conviction and a controlled substance offense from 2018. Mr. Crews understands that he committed a serious crime and that he has a significant criminal record. However, a closer look at his offense conduct and criminal history reveals that he is

4

not a large-scale drug dealer.

Mr. Crews grew up abusing drugs from a young age. Despite this fact, his prior convictions, with the exception of the two felonies which qualify him as a career offender, are misdemeanors. Several are traffic related, such as driving without a license. Six of his 17 misdemeanor convictions relate to passing bad checks. For nearly every single offense, including his felony convictions, he received suspended sentences. Mr. Crews engaged in selling drugs for the simple purpose of obtaining drugs for his own use and to make enough money to continue to purchase drugs for personal use.

Mr. Crews has never trafficked a high volume of drugs, nor did he live an opulent lifestyle. He did not purchase expensive cars or wear designer clothing. He did not engage in selling drugs for any other purpose than to ensure his own access to drugs to feed his addictions. Compared to the large quantities of drugs usually seen in federal criminal cases, Mr. Crews' case involved relatively small quantities of drugs. Even the larger amounts of marijuana and methamphetamine do not indicate that Mr. Crews was a drug trafficking kingpin. Notably, his prior convictions for selling drugs, PSR ¶¶ 32-33, each involved less than 2 grams of methamphetamine. Given that Mr. Crews was a low-level seller who has always dealt in smaller amounts to support his own habit, his offense conduct is a mitigating factor when compared to more egregious federal drug offenses.

Section 3553(a) requires sentencing courts to impose a sentence that is "sufficient, but not greater than necessary." The court must consider, among other things, the "nature and circumstances of the offense," the "characteristics of the defendant," the kinds of sentences available to the court, the recommended guideline sentencing range, and the need to avoid sentencing disparities in cases of similar conduct and similar criminal records. 18 U.S.C. § 3553(a). The court must also consider the need for the sentence imposed to "reflect the seriousness of the offense, to promote respect for the law,

5

Case 5:22-cr-00034-M   Document 27   Filed 01/03/23   Page 5 of 14

and to provide just punishment," to deter criminal conduct, and to "protect the public." *Id.*

Although § 3553(a)(4) requires that the court **consider** the Guidelines and a sentence within the suggested range is presumptively reasonable (*see generally Rita v. United States*, 551 U.S. 338 (2007), the Guidelines remain advisory under *United States v. Booker*, 543 U.S. 220 (2005). The Guidelines, therefore, are not the only factor to consider at sentencing. When the Guidelines do not assist sentencing judges in their effort to craft a fair sentence that comports with § 3553(a), they should look to the other provisions. A downward variance is appropriate in low-level drug offender cases such as Mr. Crews' as prison sentences are often greater than necessary to accomplish the goals of recidivism reduction, proportional sentencing, protecting the public, and promoting respect for the law. This Court has the power and discretion to bring balance to this disproportionate outcome. Because a career offender guideline sentence is not warranted in this case, a downward variance from the current advisory sentencing range would more adequately meet the goals of sentencing and promote a just outcome in this case.

### C. Policy and Recognition of the Need for Change in Career Offender Application.

Some context regarding the continued evolution of the United States Sentencing Guidelines bears consideration here in evaluating the propriety of sentencing defendants in accordance with the career offender guidelines. In some ways a deliberate and measured system with processes in place to ensure fair and uniform sentencing, the Guidelines at times also seem utterly arbitrary depending on when and where an individual happens to be sentenced. One obvious example is *United States v. Booker*, which finally unshackled years of judicial decision-making to make the guidelines advisory and enabling the district court judge to make a sentencing decision uniquely suited to the defendant and offense at hand. A series of reductions in both the drug offense Sentencing Guidelines and statutory

6

Case 5:22-cr-00034-M   Document 27   Filed 01/03/23   Page 6 of 14

drug offense penalties included the colloquially known "drugs minus two" amendment, "crack minus two" amendment, and the Fair Sentencing Act all reduced sentences for tens of thousands of federal defendants.

The differences between defendants sentenced before or after *Booker*, or any one of these drug sentencing amendments, were significant. While the impact of *Booker* is somewhat more difficult to quantify as it requires some knowledge of when and to what extent judges would have sentenced defendants differently given the latitude of an advisory guideline system *before Booker*, the effect of the drug reductions is evident. Setting aside the very real practical impacts on the lives of defendants and their families released early due to these reductions, also fascinating is the finding of the Commission of "no statistically significant difference between the recidivism rates" for offenders who received the reduction versus those that did not; this is the case for all three of the referenced reductions.[3]

Without getting too far afield in a general evaluation of the Sentencing Guidelines, what this bigger picture is intended to illustrate is that the Guidelines are in no way infallible, nor are they always proportionate in measuring those offenders most likely to recidivate with correspondingly measured sentences.

The Career Offender Guideline is by no means an exception to this fallibility.

Indeed, another recent report by the United States Sentencing Commission recognizes exactly this: In the 2016 *Report to the Congress: Career Offender Enhancements*, the Sentencing Commission recognized, among other things, the "continued reliability of the guideline's criminal history score in

---

[3] *See*, United States Sentencing Commission, *Retroactivity & Recidivism: The Drugs Minus Two Amendment*, July 2020, viewed at https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2020/20200708_Recidivism-Drugs-Minus-Two.pdf, last visited on February 16, 2021.

predicting recidivism, and the impact an offender's criminal history score has on increasing the offender's range of punishment..." In other words, without even getting to the Career Offender enhancement provided for in § 4B1.1, the Guidelines have *already* taken criminal history into account by application of §§ 4A1.1-4A1.3 in a way that (1) accurately predicts recidivism, and thereby (2) increases punishment accordingly.

What role, then, does the Career Offender enhancement play, other than to exponentially increase punishment?

The Commission did find issue with the Career Offender enhancement as currently formulated, the formulation that remains applicable in Mr. Crews' guideline calculation. First, the Commission identified three basic groups of individuals who are subject to career offender guidelines: those with current and prior drug offenses only, those with violent offenses only, and those with mixed drug and violent offenses. Second, the Commission identified sentencing trends within these three categories, with "violent only career offenders" significantly more likely to receive sentences within the career offender range, compared to those with drugs only or mixed (drugs and violent offenses).[4] This seeming aggregation of the collective wisdom of sentencing judges to sentence outside the career offender guidelines suggests an overall recognition within the federal system that the career offender guidelines should be applied only in rare situations and after careful consideration. And indeed, even in the seeming "worst" of the bunch, those with violent offenses *only*, it was only a little less than half that were sentenced within the career offender range- 47.5%.

---

[4] For violent only career offenders, 47.5% of offenders were sentenced within the career offender range; for mixed and drugs only, the percentages were 23.5% and 22.5%, respectively (p. 44, *Report to the Congress; Career Offender Enhancement*).

Although not implemented at the time of this writing, the Commission even went so far as to recommend a wholesale amendment to the Career Offender Guideline: that a defendant have at least one felony "crime of violence" to even *potentially qualify* as a career offender. This, of course, within the current overarching system whereby the guidelines are advisory as a matter of course.

All this to say, the sentencing data suggests important differences between those defendants with drug offenses only, mixed offenses, and violent offenses only. And although the only definitive change recommended was to remove those individuals with drug offenses *only* from the enhanced punishment of § 4B1.1, the Commission also recognized that with respect to the sentences imposed, "mixed offenders look more like offenders in the drug trafficking only pathway." As such, "the sentencing outcomes for offenders in the mixed pathway may also support Congressional consideration of a more graduated approach for these career offenders."

That the Commission recognizes these potential flaws with the Career Offender guideline, along with the apparent collective wisdom of federal sentencing judges across the nation, suggests at a minimum that this enhancement should be applied very carefully.

**D.    Mr. Crews and the Career Offender Enhancement**.

A number of different factors specific to Mr. Crews, as provided for pursuant to the analysis mandated by 18 U.S.C. § 3553(a), suggest application of the Career Offender Enhancement would result in far too punitive a sentence.

First, the passage of time. Mr. Crews' initial qualifying predicate conviction, as discussed above happened nearly two decades ago when Mr. Crews was only 27 years old. Mr. Crews is now 45 years old. Further, as noted above, had that crime occurred only a few months earlier, or had Mr. Crews been

9

Case 5:22-cr-00034-M    Document 27    Filed 01/03/23    Page 9 of 14

released from custody a few months sooner, the conviction would be too old to qualify as a predicate and he would not qualify as a career offender.

Importantly, it is not as if this offense, and the second offense which qualifies Mr. Crews for Career Offender treatment, are not counted in assessing appropriate punishment; a total of seven criminal history points accrue from these offenses in addition to the points he receives from other convictions, which collectively place him in CHC VI independent of the application of the career offender guidelines.

Also importantly, Mr. Crews has had no comparable offenses involving violence since; a single misdemeanor relating to carrying a weapon appears to be the only other charge involving violence since. Given this context, Mr. Crews certainly falls into the "mixed" group identified by the Sentencing Commission, and several factors mitigate against finding too much significance from a crime of violence committed nearly two decades ago, without this conduct repeating itself in the years since.

### E.     Additional Sentencing Considerations.

Charles Crews comes before this court after numerous state court convictions but never having served more than one year in custody. He asks this Court to exercise discretion and sentence him to a sentence outside of the career offender guideline range. While Mr. Crews has been no stranger to the criminal justice system, he **has** for the most part been unaccustomed to incarceration. The past year and a half in custody has given him the time to reflect on his past mistakes. He recognizes that his conduct was wrong and he wishes to make fundamental changes that will ensure he never returns to criminal activity.

Mr. Crews is an addict. With proper and sustained treatment, both in the BOP and in the community, he can gain the skills and tools he will need to remain drug free going forward. He

recognizes that time in custody is both warranted and necessary to serve the purposes of sentencing, but respectfully submits that all of the purposes of a criminal sentence can be accomplished by a below guideline sentence.

Given the fact that Mr. Crews has never spent more than a year in custody, any sentence above that would be punitive, but a sentence over 10 years is would be excessive and more likely to promote disrespect for the law, rather than respect. Protection of the community is a valid concern, however, that goal can more effectively be achieved by giving Mr. Crews the drug treatment he so desperately needs. By giving him the means to overcome his addictions, this Court can ensure that Mr. Crews is no longer a threat to the safety of the community.

Another purpose of criminal sentencing is deterrence, both specific and general. While many believe that the higher the sentence, the greater the effect in deterring others, the empirical research shows no relationship between the sentence length and deterrence. The general research finding is that "deterrence works," in the sense that there is less crime with a criminal justice system than there would be without one. But the question for the Court is "marginal deterrence," *i.e.*, whether any particular quantum of punishment results in increased deterrence and thus decreased crime. Here, the findings are uniformly negative: there is no evidence that increases in sentencing length reduce crime through deterrence. "Three National Academy of Science panels, all appointed by Republican presidents, reached that conclusion, as has every major survey of the evidence."[5]

The reason that higher sentences do not have a deterrent effect is that potential criminals are not generally aware of the penalties for their prospective crimes, do not believe they will be apprehended and convicted, and simply do not consider sentence consequences in the manner one might expect of

---

[5]Michael Tonry, *Purposes and Functions of Sentencing*, 34 Crime and Justice: A Review of Research, 28-29(2006).

rational decision makers. Tonry, *supra* n. 11, at 28-29. A review of the issue concluded: "There is generally no significant association between perceptions of punishment levels and actual levels. . . implying that increases in punishment levels do not routinely reduce crime through general deterrence mechanisms."[6] For drug offenses specifically, sentence severity does not deter because "removing individual offenders does not alter the structural circumstances conducing to the crime." *Id.* "[C]riminologists and law enforcement officials testifying before the Commission have noted that retail-level drug traffickers are readily replaced by new drug sellers so long as the demand for a drug remains high. Incapacitating a low-level drug seller prevents little, if any, drug selling; the crime is simply committed by someone else." USSC, *Fifteen Years of Guidelines Sentencing: An Assessment of How Well the Federal Criminal Justice system is Achieving the Goals of Sentencing Reform at 50, p. 134 (2004)* available at https://www.ussc.gov/research/research-and-publications/research-projects-and-surveys/fifteen-years-guidelines-sentencing.

Given the ineffectiveness and ethical problems with general deterrence and the financial costs to society of imprisoning an individual, general deterrence, particularly in Mr. Crews' case as a low-level drug dealer is not a good reason for a lengthy prison term.

The final purpose of sentencing is rehabilitation. When the Sentencing Reform Act was enacted, Congress did not believe that prison was rehabilitative. Today, there is substantial evidence that prison, by disrupting employment, reducing prospects of future employment, weakening family ties, and exposing less serious offenders to more serious offenders, leads to increased recidivism,[7] and that

---

[6] Gary Kleck, et al, *The Missing Link in General Deterrence Theory*, 43 Criminology 623 (2005).

[7] *See* Lynne M. Vieraitis, Tomaslav V. Kovandzie, Thomas B. Marvel, *The Criminogenic Effects of Imprisonment: Evidence from State Panel Data 1974-2002*, 6 Criminology & Public Policy 589 (2007).

community treatment programs are more effective in reducing recidivism than prison treatment programs. Mr. Crews is in need of treatment, but that need can best be met while on supervised release in the community.

## CONCLUSION

For the reasons discussed in this memorandum, in addition to any other deemed appropriate by the Court, Mr. Crews respectfully requests that the Court impose a below guidelines sentence. Such a sentence would be sufficient but not more than necessary to meet all the purposes of sentencing in this case.

Respectfully requested this 3rd day of January, 2023.

                              G. ALAN DuBOIS
                              Federal Public Defender

                              /s/ Deirdre A. Murray
                              DEIRDRE A. MURRAY
                              Assistant Federal Public Defender
                              Attorney for Defendant
                              Office of the Federal Public Defender
                              409-A Broad Street
                              New Bern, North Carolina 28560
                              Telephone: 252-633-2970
                              Fax: 252-633-6385
                              E-mail: Deirdre_Murray@fd.org
                              Connecticut Bar No. 22981
                              LR 57.1 Counsel Appointed

13

Case 5:22-cr-00034-M   Document 27   Filed 01/03/23   Page 13 of 14

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing was served upon:

CHAD RHOADES
Assistant United States Attorney
Eastern District of North Carolina
150 Fayetteville Street, Suite 2100
Raleigh, NC 27601

by electronically filing the foregoing with the Clerk of Court on January 3, 2023, using the CM/ECF system which will send notification of such filing to the above.

This the 3rd day of January, 2023.

/s/ Deirdre A. Murray
DEIRDRE A. MURRAY
Assistant Federal Public Defender
Attorney for Defendant
Office of the Federal Public Defender
409-A Broad Street
New Bern, North Carolina 28560
Telephone: 252-633-2970
Fax: 252-633-6385
E-mail: Deirdre_Murray@fd.org
Connecticut Bar No. 22981
LR 57.1 Counsel Appointed